PEOPLE ex rel. CHURCHILL v. GREENE, Police Com'r.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—DUTIES OF CAPTAIN—SERGEANT ACTING AS CAPTAIN—NEGLECT OF DUTY.

Under rule 6 of the police department of the city of New York, providing that in the absence of a captain his duties shall be performed by one of the sergeants of the precinct, who shall possess the powers of a captain, a sergeant in command, acting as a captain, is as much responsible for a neglect of duty as captain as though he were such an officer.

2. SAME—NEGLECT OF DUTY—EVIDENCE.

In proceedings to review a determination of the police commissioner dismissing a police sergeant for neglect of duty, evidence considered, and held sufficient to sustain the order.

Certiorari by the people, on the relation of James Churchill, to review the determination of Francis V. Greene, as police commissioner, dismissing relator, a police sergeant, from the police department of the city of New York. Order of dismissal affirmed, and writ quashed.

Argued before PATTERSON, HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

A. S. Gilbert, for relator.

Theodore Connoly, for respondent.

McLAUGHLIN, J. The relator, a police sergeant, on the 18th of November, 1901, was assigned to duty as a captain in command of the Fifteenth Precinct in the city of New York, and he continued therein until the 24th of April following, when he was removed therefrom, and tried upon charges which had been preferred against him. The charges were six in number: (1) Neglect of and omission to perform duty; (2) making false reports to his superior officers; (3) neglect and disobedience of orders and of the rules and regulations of the police department; (4) conduct unbecoming an officer and conduct injurious to the welfare of the service and subversive of the police department and force; (5) conduct unbecoming an officer; and (6) breach of discipline. He was found guilty only of the first four charges, the specifications of which alleged, in substance, that he had failed to perform his duty as such acting captain in the Fifteenth Precinct by neglecting and omitting to close and suppress, or making false reports of, upwards of 30 houses of prostitution, the street numbers of which were given, and had failed to detect violations of the liquor tax law at 11 places, the street numbers of which were also given. As to these specifications the commissioner found that the relator had neglected and omitted to perform his duty in suppressing or closing 22 houses of prostitution out of those specified, and had failed to detect violations of the liquor tax law in 10 out of 11 of those named. The findings of the commissioner that the houses of prostitution named did in fact exist, or that there had been violations of the liquor tax law in the manner specified, do not seem to be seriously contested. What is claimed is (1) that the relator, being a police

sergeant, could not be held responsible for failure to adequately perform the duties of a police captain; and (2) if he could, the evidence did not justify a conclusion that there had been any dereliction of duty upon the part of the relator, inasmuch as it was not possible for him to close such houses or prevent such violations of law with the force at his command.

There is no force in the first contention. There is nothing in the rules and regulations of the police department which prevents or prohibits a police sergeant being assigned and required to perform the duties of a captain. On the contrary, rule 6 provides that in cases of vacancy or in the absence of the captain by reason of illness or absence from duty or by permission of the police commissioner, the duties required of him shall be performed by one of the sergeants of the precinct selected for that purpose. The sergeant so selected shall be designated as sergeant in command, and shall, in the absence of such captain, possess and exercise all the powers of a captain, and shall enforce the orders, rules, and regulations established for the government of the precinct. The relator was regularly assigned to the Fifteenth Precinct as the sergeant in command, and as such, in the absence of the captain, possessed and exercised all the powers of a captain. He assumed to act, and therefore was as much responsible for a dereliction of duty as though he were in fact a police captain. It is not difficult to see that, if the relator could be excused for failure to perform duty on the ground claimed, there would be no efficiency in the police department, inasmuch as laws could be violated at will, without anybody in it being held responsible for the same.

Nor is there force in the second contention. The record is a voluminous one. It contains upwards of 3,000 printed pages, and it would serve no useful purpose to detail the evidence, disgusting as it is, relating to each one of the houses, or to the violations of the liquor tax law. It is sufficient to say that the evidence adduced at the trial is so convincing it is difficult to see how the commissioner could have reached any conclusion other than the one which he did. Many of these houses were of such a notorious character that the relator must have known of their existence. In fact, I do not understand that he denies he had such knowledge, at least as to some of them, or that liquors were being sold therein in violation of law; and he had at his command a force sufficient to have closed the houses and prevented violations of law had he honestly and in good faith attempted to do so. That he did not make such attempt is clearly and conclusively established, and it is only necessary to refer to one or two of the houses to show that fact. That there was feeling between the relator and Inspector Cross may be conceded; but this did not prevent the relator discharging his duty, nor was it any excuse for his failure to do what he knew under the rules and regulations of the police department and the laws of the state he was obligated to do, viz., prevent, so far as possible, the commission of crime. He knew, because he was informed by Patrolman Bock, one of his officers in

citizen's clothes, that 230 East Ninth street was a house of prostitution, and that one Bertha Hitz was in charge. Office Bock testified that he visited this place several times, and on each occasion he asked Bertha Hitz if she had "any girls upstairs," and her invariable reply would be "No"; that she only had two, and, if she "could only get rid of the place, she would get out." Notwithstanding this, Bertha Hitz was not arrested, nor does any effort seem to have been made to prevent her from violating the law. The relator also knew that the rear house of No. 27 Second street was a notorious resort, and yet he never reported it, and his only excuse was that the inspector knew more about it than he did. One cannot read the relator's cross-examination in relation to this house and his subsequent acts in connection with the arrest of Blanche Vernon, the proprietor or person in charge of it, without reaching the conclusion that such house was permitted to exist by the relator's inactivity, if not his connivance. The place was raided by the police on the morning of March 17, 1902, and Blanche Vernon arrested. When the raid was made the relator stood on the opposite side of the street, notwithstanding which fact he had his name entered in the blotter as the officer who made the arrest. The warrant upon which Blanche Vernon was arrested was obtained on Saturday, the 15th of March, and yet was not executed until the following Monday morning, despite the fact that the best time to execute a warrant against a place of this description, according to the testimony, was on Saturday night or Sunday morning. Not only this, but when the officers entered the house to execute the warrant the only persons found therein were several women attired in street dresses, and, with the exception of a hat and coat, ready to proceed at once to the station house. The conclusion is irresistible that information as to the existence of the warrant and the time when it would be executed had been conveyed by some one to Blanche Vernon. When she arrived at the station house her bondsman was on hand, and in this connection it is of interest to note that the relator accepted the bondsman offered by her, and that person was one of the reputed owners of No. 27 Second street.

Other instances might be given of the relator's inactivity equally as strong as the two cases cited. At the trial, the relator, evidently appreciating the force of the evidence offered showing his inactivity as to the houses of prostitution mentioned, sought to prove that their existence was due in a large measure to the fact that the force of twelve officers in citizen's clothes which he had at the time he went into the precinct was, on or about the 1st of February, reduced to six; and in this connection he testified that all of the houses mentioned in the specifications were, on the 1st of February closed, with the exception of four, but that twenty-eight of them opened up on the very day that the reduction in his force took place. It cannot be that places of the character described could spring into existence in an hour or a day. They had existed prior to the time the reduction took place. They were of long standing. The character and number of people that resorted to

some of them indicate this, as well as the practices therein permitted.   The relator's testimony upon this subject is incredible, and unworthy of belief.

The efficiency of the police force is the only thing which can prevent, in a great city like New York, the existence of vice and the commission of crime.   It is the protection which the citizen has as to his person and property, and there cannot be an efficient police force if an officer discharging the duties which the relator assumed to discharge is unable, by reason of incompetency, or unwilling, by reason of being in league with violators of the law, to prevent the commission of crime to the extent that the same was committed in the Fifteenth Precinct while he was in charge.   The court would be derelict in its duty if it did not, in so far as it lies in its power, place its stamp of disapproval upon the acts of an officer who, by his inactivity—to use no stronger term—permits crime to flourish as it did in this precinct.

The relator had a fair trial.   The evidence sustains the findings of the commissioner, and for that reason I think his order dismissing the relator should be affirmed, and the writ quashed, with $50 costs and disbursements.   All concur.   PATTERSON, J., in result.